**Kathy WATTS, Plaintiff-Appellant,**

**v.**

**BOYD PROPERTIES, INC., James E. Boyd, Maybelle Stickel and Morrowood Garden Apartments, Ltd., Defendants-Appellees.**

**No. 84–8535.**

United States Court of Appeals, Eleventh Circuit.

April 25, 1985.

---

Antonio L. Thomas, Donald M. Dotson, Atlanta, Ga., for plaintiff-appellant.

Rickman P. Brown, Atlanta, Ga., for defendants-appellees.

Before KRAVITCH and CLARK, Circuit Judges, and PECK *, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge:

This case presents the question of the scope of standing to sue under 42 U.S.C. § 1982. Metro Fair Housing Services, Inc. ("Metro"), a nonprofit Georgia corporation organized for the purpose of eliminating discriminatory housing in the Atlanta area, commenced this action in the United States District Court for the Northern District of Georgia, seeking declaratory, injunctive and monetary relief. The complaint alleged that Appellees had engaged in discriminatory housing practices in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1982, and 42 U.S.C. § 3601 *et seq.*, commonly known as the Fair Housing Act of 1968. Appellant Kathy Watts, a black female, was a volunteer "tester" for Metro.[1] Appellees are Morrowood Garden Apartments ("Morrowood"); Boyd Properties, which manages Morrowood; James Boyd, president of Morrowood; and Maybelle Stickel, resident manager of Morrowood.

In early June of 1982, Metro received a report that Morrowood was discriminating against blacks in the rental of its apartments. On June 10, 1982, Metro sent two

---

* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. In *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 370, 374, 102 S.Ct. 1114, 1119, 1121, 71 L.Ed.2d 214 (1982), the Supreme Court defined "testers" as "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices." "Steering" is the practice of "directing prospective home buyers interested in equivalent properties to different areas according to their race." *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 1605, 60 L.Ed.2d 66 (1979).

testers, one white and one black, to determine the validity of the allegation. Metro directed the testers to make separate inquiries about the availability of either a one-bedroom or two-bedroom apartment. Watts entered the resident manager's office first and inquired about the availability of a two-bedroom unit for July 1, 1982. Stickel informed her that no two-bedroom units would be available until the fall of 1982 but that Watts could place her name on a waiting list. Watts next asked about the availability of a one-bedroom apartment and was told that there were no vacancies. Stickel then suggested that Watts inquire at Anderson Park Apartments, an apartment complex with all black residents, also managed by Boyd Properties. Shortly after Watts left, the white tester entered the resident manager's office and inquired about the availability of either a one- or two-bedroom apartment. Stickel informed her that a two-bedroom unit would not be available until the fall, but a one-bedroom apartment would be available for occupancy on July 1, 1982. The basis of this lawsuit is the contention that Stickel intentionally provided Watts with false information about the availability of a one-bedroom apartment.

■ The district court denied Appellees' motion for summary judgment with respect to claims raised by Metro and Watts under the Fair Housing Act; however, the court granted Appellees' motion with respect to claims raised by Appellant under 42 U.S.C. § 1982. The court held that since Watts did not allege any injury to herself arising from a violation by Appellees of § 1982, she was without standing to assert a claim based upon § 1982. *Metro Fair Housing Services, Inc. v. Morrowood Garden Apartments*, 576 F.Supp. 1090 (N.D. Georgia 1983). Watts appeals from the order granting Appellees' motion for summary judgment on the § 1982 claim.[2]

42 U.S.C. § 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

The Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, prohibits discrimination in the sale or rental of housing. Both testers and nonprofit organizations such as Metro have standing to bring claims under § 3604(d).[3] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–79, 102 S.Ct. 1114, 1121–24, 71 L.Ed.2d 214 (1982). As the district court noted, although many of the cases arising under the Fair Housing Act also involve claims arising under § 1982, courts have often decided the cases without distinguishing between the two statutes. Thus, the district court concluded, under the existing case law it is not clear that because testers have standing under § 3604(d), they should also have standing to assert a § 1982 claim. *Metro Fair Housing* at 1094.

■ To establish standing, a plaintiff must demonstrate that he has " 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). In *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976), the Supreme Court stated that "the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself

---

**2.** The district court also held that Metro lacked standing to assert a § 1982 claim. Because Metro has withdrawn as a party to the appeal, however, the question of whether Metro has standing is no longer before this court. Thus, the sole issue on appeal is whether Watts has standing to assert a § 1982 claim. This court has jurisdiction under 28 U.S.C. § 1292(b).

**3.** 42 U.S.C. § 3604(d), § 804(d) of the Fair Housing Act, makes it unlawful:

(d) To represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale or rental when such dwelling is in fact so available.

that is likely to be redressed by a favorable decision."

In *Havens,* the Supreme Court looked to the congressional intent of the Fair Housing Act in determining whether testers have standing to sue under that statute. The Court noted that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing....'" *Havens, supra,* 455 U.S. at 374, 102 S.Ct. at 1121, quoting *Warth v. Seldin, supra,* 422 U.S. at 500, 95 S.Ct. at 2206. The Court concluded:

> A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).

Watts makes the argument that the same rationale for conferring standing to testers under § 3604(d) also applies to § 1982. Watts notes that § 1982 was adopted to eliminate "the badges and incidents of slavery." *Jones v. Mayer Co.,* 392 U.S. 409, 441, 88 S.Ct. 2186, 2204, 20 L.Ed.2d 1189 (1968). She contends that the right to bring an action under § 1982 for vindication of the right to truthful information on the availability of housing is a crucial part of the enforcement of the Civil Rights statute. Watts' position is supported by the decision of the Third Circuit in *Meyers v. Pennypack Woods Home Ownership Assn.,* 559 F.2d 894 (3d Cir. 1977). In *Meyers,* the court held that a black tester had standing under § 1982 to maintain a civil rights action alleging discrimination in housing. The court in *Meyers* reasoned that even if the black tester applied for housing solely to test the legality of the defendant's policies, such was sufficient to confer standing. In reaching its holding, the court relied upon *Evers v. Dwyer,* 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958), in which the Supreme Court held that an "actual controversy" existed where the black plaintiff had sat in the white section of a segregated bus solely for the purpose of testing the legality of the state enforced segregation. The plaintiff had never ridden a Memphis bus prior to the incident in question; he was not arrested, but left the bus after being ordered by police to move to the back of the bus. The court in *Meyers* also cited *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), in which a group of clergymen attempted to use segregated facilities at a Jackson, Mississippi bus terminal for the purpose of testing the legality of that city's segregation laws. The ministers were arrested and subsequently convicted in state court. The Supreme Court held that, assuming that the clergymen went to the Jackson bus terminal for the sole purpose of testing their rights to unsegregated public accommodations, that fact did not disqualify them from seeking damages under 42 U.S.C. § 1983. Appellant Watts contends that the rationale of *Meyers* is compelling. She asserts that she had the same goal as that of the plaintiffs in *Evers* and *Pierson* —to test the legality of discriminatory practices. Appellees, on the other hand, argue that *Meyers* is based on faulty reasoning because the plaintiffs in both *Evers* and *Pierson* suffered "direct and palpable" injuries while Watts' interest was merely a "tester's academic exercise." Although it is true that the clergymen in *Pierson* were arrested, the bus rider in *Evers,* who rode the bus solely for the purpose of challenging the segregation law, had no personal interest or stake in riding the bus. We agree with the court in *Meyers* that even if a tester is motivated solely by the desire to challenge the legality of allegedly discriminatory practices, this is a sufficient purpose to confer standing. *Meyers* at 898. Accordingly, we hold that Watts has standing to maintain her action under § 1982.

In *Warth v. Seldin, supra,* the petitioners, various organizations and individual

residents in the Rochester, N.Y. metropolitan area, brought action against the town of Penfield, N.Y., alleging that the town's zoning ordinance "effectively excluded persons of low and moderate income from living in the town, in contravention of petitioners' First, Ninth and Fourteenth Amendment rights and in violation of 42 U.S.C. §§ 1981, 1982 and 1983." *Warth* 95 S.Ct. at 2202. As to the petitioners who alleged that they had unsuccessfully attempted to obtain housing in Penfield, the Court found that "the facts alleged failed to support an actionable causal relationship between Penfield's zoning practices and petitioners' asserted injuries." The Court held "only that a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm *him,* and that he personally would benefit in a tangible way from the court's intervention." *Warth* 95 S.Ct. at 2210. Appellees assert that *Warth* is controlling authority because in that decision the Court held that parties such as the Appellant herein have no standing to assert claims under § 1982. We disagree with Appellees' contention that the petitioners in *Warth* can be characterized in the same manner as the appellant in this action. In *Warth,* the individual petitioners failed to establish that their inability to obtain housing in Penfield was the result of the town's zoning ordinance rather than their own financial situation and housing needs. In contrast, Watts has clearly alleged that she was given false information about available housing as a direct result of Appellees' racially discriminatory practices. Thus, it is obvious that Appellees' contention that *Warth* is directly on point is erroneous.

Appellees also argue that the district court's grant of summary judgment can be sustained on the alternative ground that the undisputed facts show that Watts was provided different information, not based upon her race, but because she did not ask the same questions of the resident manager as did the white tester. The record establishes that the white tester asked about the availability of either a one-

or two-bedroom unit, whereas Watts first inquired about the availability of a two-bedroom unit, was placed on the waiting list, and then casually inquired if any one-bedroom apartments would be vacant on July 1. Appellees urge that the two testers received different information because they asked different questions, not because of any intent to discriminate. The problem with Appellees' argument is its struthious avoidance of the fact that Watts was steered to Anderson Park Apartments, an all black complex, while the white tester was informed of the availability of a one-bedroom unit at Morrowood. We agree with the district court that Appellees' attempt to distinguish the two situations does not justify summary judgment in their favor.

Accordingly, we REVERSE and REMAND for further proceedings not inconsistent with this opinion.