Morris S. MOSES, et al., Plaintiffs,

v.

K-MART CORPORATION, Defendant.

No. 94–488–CIV.

United States District Court,
S.D. Florida.

Oct. 30, 1995.

Conroy, Simberg & Lewis, Venture Corporate Center I, Hollywood, FL, for Plaintiffs.

Charles F. Henley, Jr., Haynsworth, Baldwin, Johnson & Harper, Jacksonville, FL, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART K–MART'S MOTION FOR REMITTITUR

ATKINS, Senior District Judge.

THIS MATTER is before the Court on Defendant K–Mart's Motion for Remittitur. After careful review of the motion, Plaintiffs' Response, K–Mart's Reply, applicable case-law and the record in the case, it is hereby

ORDERED AND ADJUDGED that:

(1) Jury's award of liquidated damages as to Plaintiffs Seymour Kobal, Raquel Puente and William Gordon, shall be remitted to an amount equal to the award for Lost Wages or Back Pay as determined by the verdicts in the case. In as far as this corresponds with

K–Mart's Motion for Remittitur, that part of the Motion is GRANTED;

(2) Prevailing Plaintiffs who are awarded liquidated damages under the Age Discrimination in Employment Act, 29 U.S.C.A. § 621 *et seq.*, (ADEA) may not also be awarded punitive damages under the Florida Civil Rights Act, *Fla.Stat.Ann.* § 760 *et seq.* (FRCA). As a result, the jury's award of $350,000 to each prevailing Plaintiff is hereby remitted to $0.00;

(3) All other requests for remittitur are hereby DENIED.

### DISCUSSION

This case was brought by six Plaintiffs, all former employees of K–Mart, alleging violations of the Age Discrimination in Employment Act, 29 U.S.C.A. § 621 *et seq.* (ADEA) and the Florida Civil Rights Act, *Fla.Stat. Ann.* § 760 *et seq.* (FRCA). At the liability phase, the jury returned a verdict finding K–Mart in wilful violation of the ADEA, and in violation of the FRCA, in regards to only three Plaintiffs, Seymour Kobal, Raquel Puente and William Gordon. The jury, in separate pronouncement, awarded damages to all three victorious Plaintiffs in the following manner:

A. Seymour Kobal

| | | |
|---|---|---:|
| 1. | Lost wages or back pay | $ 75,204.00 |
| 2. | Liquidated damages | 150,408.00 |
| 3. | Compensatory damages | 170,000.00 |
| 4. | Punitive | 350,000.00 |
| | TOTAL | $745,612.00 |

B. Raquel Puente

| | | |
|---|---|---:|
| 1. | Lost wages or back pay | $119,026.00 |
| 2. | Liquidated damages | 238,052.00 |
| 3. | Compensatory damages | 150,000.00 |
| 4. | Punitive | 350,000.00 |
| | TOTAL | $857,078.00 |

C. William Gordon

| | | |
|---|---|---:|
| 1. | Lost wages or back pay | $ 6,261.00 |
| 2. | Liquidated damages | 12,522.00 |
| 3. | Compensatory damages | 200,000.00 |
| 4. | Punitive | 350,000.00 |
| | TOTAL | $568,783.00 |

Now K–Mart comes before the Court claiming that the jury awards are excessive as a matter of law, and that "remittitur is appropriate as to each type of damages awarded." In support, K–Mart puts forth the following arguments:

· *Lost wages or back pay*—The evidence demonstrated that Plaintiffs failed to mitigate damages. The jury must have failed to consider such evidence, and any award should be reduced accordingly.

· *Liquidated Damages*—Under the applicable statutory language for the determination of liquidated damages, Congress placed an upper limit on the amount to be awarded by declaring that it should be equal to the *Lost wages or back pay* award. The jury awarded double that amount, and it should be remitted.

· *Compensatory Damages*—There are three separate arguments on the part of K–Mart why this award is excessive.

   A. The Court's instructions to the jury were incorrect as a matter of law, and improperly expanded the permissible bases for awarding compensatory damages under the FRCA.

   B. Plaintiffs failed to produce sufficient evidence to support an award of compensatory damages.

   C. Finally, even if the awards were supportable by the evidence, the amounts awarded are excessive as a matter of law.

· *Punitive Damages*—K–Mart, again, offers a number of bases for finding that the award of punitive damages is improper.

   A. The evidence is insufficient to support a finding that punitive damages are warranted.

   B. The awards were so excessive that they must "shock the judicial conscience."

   C. Punitive damages were awarded under the Florida Civil Rights Act which sets a statutory maximum of $100,000 per plaintiff. The jury awards exceeded this amount, and should be remitted to the maximum statutory level.

· *Double Recovery*—Finally, K–Mart argues that an award of punitive damages as well as liquidated damages constitutes double recovery, since both types of

damages are based on the same legal principle—punishment.

Plaintiffs, for their part, argue, generally, that the evidence at trial was sufficient to support an award as to all types of damages, and that none of the awards is excessive enough to support a finding by the Court that they "shock the judicial conscience." Plaintiffs have, however, admitted that the jury's calculation of *liquidated damages* is incorrect as a matter of law and should be reduced to an award equal to that for *lost wages or back pay.* Finally, Plaintiffs contend that the Florida Legislature's cap of $100,000 on punitive damages under the FRCA, is violative of both the United States and Florida Constitutions, and therefore, the amount awarded by the jury should not be reduced.

### STANDARD OF LAW

■ "Remittitur" is the procedural process by which an excessive verdict of the jury is reduced. *Black's Law Dictionary* 1295 (6th ed. 1990). It is well understood that a "jury's verdict should not be disturbed if there is competent evidence in the record to support it." *Deakle v. John E. Graham & Sons,* 756 F.2d 821, 827 (11th Cir.1985). When considering a motion for remittitur, the standard for determining the appropriateness of the award is whether it "exceeds the amount established by the evidence." *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1448 (1985), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985).

Interestingly, Plaintiffs urge the Court to adopt a standard that remittitur is only appropriate in cases where the award "is so exorbitant as to shock the judicial conscience or indicate bias, passion, prejudice, or other improper motive on the part of the jury." In support of this view, Plaintiffs cite to *Goldstein,* 758 F.2d at 1448, and to *Overseas Private Inv. Corp. v. Metropolitan Dade County,* 826 F.Supp. 1564, 1582 (S.D.Fla., 1993), *aff'd in part and rev'd in part,* 47 F.3d 1111 (11th Cir.1995).

The *Overseas* decision declares, as Plaintiffs point out, that:

The law in this circuit concerning remittitur is clear. A jury verdict is not to be set aside unless it is so exorbitant as to shock the judicial conscience or indicate bias, passion, prejudice, or other improper motive on the part of the jury. *Overseas,* 826 F.Supp. at 1582.

The *Overseas* Court apparently relies on the holding in *Goldstein* for this standard. However, a reading of *Goldstein* demonstrates that the standard enunciated in *Overseas,* as applying to remittitur, is actually reserved to the question whether a new trial is the appropriate remedy for an excessive verdict. As the Court in *Goldstein* stated:

It is true that a grossly excessive award may warrant a finding that the jury's verdict was swayed by passion and prejudice and thus *necessitate a new trial.* However, *a new trial* should be ordered only where the verdict is so excessive as to shock the conscience of the court. *Goldstein,* 758 F.2d at 1447 (emphasis added).

After finding that "the admitted excessiveness of the jury's award" did not shock the judicial conscience or reflect improper passion, the Court of Appeals concluded that the proper course of action in these cases is to order remittitur. *Id.* at 1448. Clearly, the exceedingly stringent standard of "shocks the conscience" is only applicable to the decision whether to grant a new trial.

■ Thus, the standard for remittitur is, as it has always been, that it "is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." *Goldstein,* 758 at 1448. *See also Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1385, 1387 (9th Cir.1987); *Shu–Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 49 (2d Cir.1984). Of course, in reaching this determination the Court is not to substitute its judgment for the jury's, and where there is sufficient evidence in the record to support the award, the Court should not reduce merely because it would have found differently.

■ Finally, if the Court finds that the jury award did exceed the amount supported by the evidence, the Court is bound to allow Plaintiffs the maximum possible recovery. That is, the award should only be reduced to

the "outer limit of the proof." *Goldstein*, 758 F.2d at 1448. *See also Howell v. Marmpegaso Compania Naviera, S.A.*, 536 F.2d 1032, 1034–35 (5th Cir.1976); *Natco, Inc. v. Williams Brothers Engineering Co.*, 489 F.2d 639, 641 (5th Cir.1974).

The Court will apply this standard to the jury's awards to determine whether remittitur is appropriate. In so doing, this Order will first examine K–Mart's challenges to the jury's liquidated and punitive damage awards, as they are based on legal challenges to the awards, and do not address evidentiary disputes. After examining the appropriateness of the awards in those two areas, the Court will then consider K–Mart's objections to the other forms of damages—namely, lost wages or back pay, and compensatory damages.

## II. Liquidated Damages

■ Under the Age Discrimination in Employment Act, specifically 29 U.S.C.A. § 626(b), liquidated damages are proper upon a finding of wilful discrimination by the Defendant.[1] In this case, the question was specifically posed to the jury whether it found K–Mart's actions, in illegally terminating prevailing Plaintiffs, to be wilful.[2] At the liability phase, the jury returned a verdict which found, in part, that K–Mart had acted wilfully in discriminating against all three prevailing plaintiffs. As a result, at the damages phase, the Court instructed the jury on its duty to award liquidated damages under § 626(b). In that instruction, the jury was informed that "the plaintiffs are entitled to have their damages from lost wages doubled ... you will award the damages you have

calculated as lost wages, plus an equal amount as liquidated damages." The jury, although properly instructed on the amount of liquidated damages to be awarded, nonetheless awarded an amount double that of the back pay award.

Congress in enacting the ADEA, allowed for its terms to be interpreted according to the procedures that it had previously outlined in the Fair Labor Standard Act (FLSA), 29 U.S.C.A. § 201 *et seq.*[3] According to the applicable section of the FLSA, § 216(b), that deals with liquidated damages, "[a]ny employer who violates [the Act] shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation ... *and an additional equal amount as liquidated damages.*" (emphasis added). An examination of § 626(b), and through incorporation, 29 U.S.C.A. § 216(b), clearly limits the amount of liquidated damages to a sum equal to the back pay award. The jury's award, therefore, is clearly erroneous as a matter of law and must be remitted.[4] The amount of liquidated damages that has been awarded to each plaintiff must be remitted to an amount equal to their respective back pay awards.

## III. PUNITIVE DAMAGES

■ K–Mart has argued that a prevailing plaintiff in an ADEA case, who has been awarded statutory liquidated damages, may not also recover punitive damages under relevant state law. Since both the Supreme Court and the Eleventh Circuit Court of Appeals have unequivocally held that liquidated damages under the ADEA are "puni-

---

1. Section 626(b) states, "[t]hat liquidated damages shall be payable only in cases of wilful violations of this chapter."

2. The Court instructed the jury:
    If you find by a preponderance of the evidence that age was a determining factor ... you must also determine whether the defendant acted wilfully in discharging plaintiffs because of their age. In other words, you must determine whether defendant deliberately, intentionally, and knowingly discharged plaintiffs because of their age. You must also determine whether defendant knew such conduct was unlawful or showed reckless disregard of whether such conduct was unlawful or not.

3. Section 626(b) provides that:
    The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided [specified sections of the FLSA].... Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title....

4. It should be noted that Plaintiffs agree that a mistake has been made, and that remittitur is appropriate.

tive" in nature, then recovery of both liquidated and punitive damages would constitute double recovery.

The Supreme Court, in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), interpreted the legislative history of the ADEA as "indicat[ing] that Congress intended for liquidated damages to be punitive in nature." 469 U.S. at 125, 105 S.Ct. at 624. The Eleventh Circuit Court of Appeals, in *Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094 (11th Cir.1987), incorporated the Supreme Court's understanding without reservation, holding that "ADEA liquidated damages awards punish and deter violators [they do not] merely compensate for damages...." 810 F.2d at 1102. Under controlling caselaw, this Court has no choice but to consider liquidated damages as akin to punitive damages for purposes of the ADEA.

Given this legal background, there can be no doubt that to allow a prevailing plaintiff to recover both liquidated damages under the ADEA, and punitive damages under the FRCA, constitutes double recovery and is therefore impermissible. Essentially, Plaintiffs would be allowed to recover two sets of punitive damages, under two separate statutes, for only one act by K–Mart, the classic example of impermissible double recovery. Given that the law will not allow Plaintiffs to recover both liquidated and punitive damages, it remains to be decided which of the two forms of damages the Plaintiffs may recover.

Ordinarily, the Court may only remit the award as to allow Plaintiffs the maximum recovery. Given that the jury's awards of liquidated damages have been remitted by half, and that the amount of punitive damages awarded per plaintiff was $350,000,[5] the punitive damages awards under the FRCA constitute the greater recovery. However, in this case, once the jury has found K–Mart to have wilfully violated the ADEA, the award of liquidated damages under the statute becomes mandatory.[6] The Court finds no basis in the record to overturn the jury's determination of wilfulness, and to do so would most likely result in error.

Given that Plaintiffs may not recover both punitive and liquidated damages, coupled with the fact that liquidated damages are mandatory in this case, the Court sees no other course than to strike the jury's award of punitive damages and remit the full amount. As a result, the Court does not need to address whether the evidence warranted an award of punitive damages, or whether the Florida cap on such damages in unconstitutional.

### III.  Other Damages

K–Mart's other claims for the remittitur of lost wages/back pay and compensatory damages, are predicated on K–Mart's view that, either the evidence is insufficient to support a finding that the damages are appropriate, or the amount of the award is grossly excessive.

■ Any review of the record in this case supports a finding that substantial evidence was presented by Plaintiffs in support of each type of damages. For instance, on the issue of whether Plaintiffs failed to properly mitigate their back pay awards, it is uncon-

---

**5.** Of course, were the Court to find that punitive damages were the appropriate award, it would first have to consider whether, under the Florida statute, all awards would have to be reduced at least to $100,000 per plaintiff.

**6.** Section 626(b) provides that "liquidated damages shall be payable only in cases of wilful violations." Further, the ADEA, through incorporation of § 216(b) of the FLSA, makes the award of liquidated damages mandatory in cases where a defendant has wilfully violated the Act, absent a showing of "good faith." *See Portal to Portal Act,* 29 U.S.C.A. § 260; *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

In the *Thurston* decision, the Supreme Court held that, although the ADEA did not incorporate § 260 of the *Portal to Portal Act,* it did include exceptions for good faith by making liquidated damages available only in cases where wilfulness has been proved.

In this case, the question of wilfulness was submitted to the jury, with instructions consistent with the Supreme Court's holding in *Thurston.* Thus, even though the jury was not asked, specifically, to consider whether K–Mart acted in good faith, by finding that K–Mart acted "recklessly" and that K–Mart's actions were wilful, the jury clearly rejected any argument that K–Mart acted in good faith in violating the Act.

troverted that all three prevailing Plaintiffs testified about employment that they either sought or obtained in the period following their termination from K–Mart. K–Mart was then given full opportunity to cross-examine all three plaintiffs, which it did. The jury was presented with sufficient evidence on this issue, and it chose to side with Plaintiffs. There is nothing in the record to compel this Court to determine that the jury erred in failing to side with K–Mart's version of the facts.

■ K–Mart further contends that Plaintiffs failed to produce sufficient evidence to support a finding of compensatory damages. Again, all three Plaintiffs testified about the physical, mental, and emotional harm caused by K–Mart's illegal actions. Further, Plaintiffs presented the testimony of Dr. John Williams, who testified that all three Plaintiffs had suffered as a result of their terminations. K–Mart had the opportunity to cross-examine all of these witnesses, and to present evidence against the witnesses at trial. As a result, there is ample evidence that the jury, after finding K–Mart's actions to be wilful, felt that the amounts awarded to each Plaintiff were necessary to "make them whole" for the injuries caused by K–Mart's illegal conduct. The record clearly supports the conclusion that sufficient evidence was produced to support the jury finding that compensatory damages were necessary. Further, the amounts awarded were not "grossly excessive" and do not, as a matter of law, "exceed the proof" offered at trial.

■ In the end, the jury was presented with sufficient evidence, from both sides, to support a finding that the various awards were proper. Further, the Court, after a lengthy charging conference with counsel from all parties, properly instructed the jury as to its duty and as to the proper bases for awarding damages to Plaintiffs.[7] The Court finds that the jury carried out its function judiciously and properly, and the amounts it awarded to Plaintiffs for lost wages/back pay and compensatory damages are supported both by the evidence presented at trial and the law.

To this end, all other requests by K–Mart to have the jury's damage awards reduced are hereby denied.

## CONCLUSION

In considering this Motion for Remittitur, the Court has given proper consideration whether to order remittitur, or to order the granting of a new trial. This Court has not found that the jury's awards are so excessive, or evidencing improper bias, as to warrant a new trial. The reduction of liquidated and punitive damages is a matter of law, and does not bring into question the propriety or validity of the jury's verdict.

Accordingly, a final judgment will soon be entered which will set out, in detail, the amount of damages that each Plaintiff will be awarded.

DONE AND ORDERED.

---

7. K–Mart has claimed that the Court's instruction on compensatory damages under the FRCA "provided for the recovery of damages beyond the scope of the statute." The Court instructed the jury that compensatory damages under the FRCA could be awarded for the following:

> Any damages sustained by the plaintiffs and any resulting pain and suffering, mental anguish and loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future, and loss of dignity and any other intangible injuries.

K–Mart contends that this instruction impermissibly deviates from the wording of the FRCA which states that compensatory damages are to be awarded for "mental anguish, loss of dignity, and other tangible or intangible injuries." *Fla. Stat.Ann.* § 760.11(5).

The wording of the Court's instruction, although semantically different from the statutory language, does not, contrary to K–Mart's contention, expand the scope of bases for awarding compensatory damages. The Court's instruction merely supplies some further guidance to the jury on what constitutes "other tangible or intangible injuries." As a result, the Court does not believe that it even expanded the bases for relief, much less impermissibly so.