Tammy STEVENS, Plaintiff-Appellant,

v.

PREMIER CRUISES, INC., a Canadian Corporation, Defendant-Appellee.

No. 98-5913.

United States Court of Appeals,

Eleventh Circuit.

June 22, 2000.

Appeal from the United States District Court for the Southern District of Florida. (No. 98-02140-CV-FAM), Federico A. Moreno, Judge.

Before EDMONDSON and BARKETT, Circuit Judges, and COHILL[*], District Judge.

PER CURIAM:

Tammy Stevens ("Plaintiff") brought this suit in district court against Premier Cruises, Inc. ("Defendant"). Plaintiff's complaint alleged claims under the Americans with Disabilities Act ("ADA") and under state law. The district court dismissed Plaintiff's complaint with prejudice under Fed.R.Civ.P. 12. Plaintiff appeals, and we vacate and remand.

I.

Plaintiff, who is largely confined to a wheelchair, decided to take a vacation aboard a cruise ship.[1] Plaintiff saw an advertisement in a Florida newspaper for a cruise aboard a Bahamian-flag ship—the *S.S. OCEANIC*—owned and operated by Defendant. The advertisement offered a four-day, three-night cruise aboard the ship for $349 per person. Plaintiff contacted her travel agent about the cruise, and the travel agent made the necessary arrangements for Plaintiff to take the cruise vacation. The travel agent, when making the arrangements for Plaintiff, was assured that Plaintiff's cabin would be wheelchair-accessible. Plaintiff,

---

[*]Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation.

[1]Because this case comes before us at the pleading stage, we accept, for the purposes of this appeal, the truth of Plaintiff's factual allegations. *See Blackston v. State of Ala.,* 30 F.3d 117, 120 (11th Cir.1994).

however, was required to pay a fee in excess of the advertised price to obtain a purportedly wheelchair-accessible cabin.

Plaintiff boarded the ship in Florida for her cruise. After the ship sailed, however, Plaintiff discovered that her cabin was not, in fact, wheelchair-accessible. Plaintiff also found that many public areas of the cruise ship were inaccessible to persons in wheelchairs. As a consequence, Plaintiff was "denied the benefits of services, programs, and activities of the vessel and its facilities."

Plaintiff then brought this suit against Defendant. Plaintiff's complaint alleged that the inaccessibility of the ship to persons in wheelchairs violated Title III of the ADA. In particular, the complaint said that Defendant had violated the ADA by failing to: (1) "provide accessible paths of access ... from entrances of rooms throughout the public areas of the vessel;" (2) "provide ADA approved signs at inaccessible routes and locations indicating the accessible route into and throughout the vessel;" (3) "modify numerous interior and exterior doors [to accommodate persons in wheelchairs];" (4) "modify and provide the requisite cabins accessible for persons with disabilities;" and (5) provide proper emergency exit signs for persons in wheelchairs. The complaint also alleged—under state law—that Defendant had engaged in fraud, unfair and deceptive trade practices, and intentional infliction of emotional distress.

Defendant moved the district court to dismiss Plaintiff's complaint under Fed.R.Civ.P. 12(b). The district court concluded that dismissal was warranted on two grounds. First, the district court—noting that Plaintiff's ADA claim only sought injunctive relief—concluded that, because Plaintiff's complaint did not allege a threat of future injury, Plaintiff had not pleaded properly her standing to pursue the ADA claim. Second, the district court determined that, because the ADA—as a matter of law—does not apply to foreign-flag cruise ships, Plaintiff's complaint failed to state a claim. The district court accordingly granted Defendant's motion and dismissed Plaintiff's complaint with prejudice.[2]

---

[2]The district court's order of dismissal does not discuss the merits of Plaintiff's state law claims. Those claims are not at issue in this appeal.

Plaintiff then filed a motion for reconsideration. In the motion for reconsideration, Plaintiff—to cure the failure to plead standing to pursue injunctive relief—sought leave to amend her complaint. Plaintiff, in fact, proffered an amended complaint to the district court. In the submission, Plaintiff alleged that, in the near future, she would take another cruise aboard Defendant's ship. The district court, however, denied Plaintiff's request for leave to amend. The district court concluded that Plaintiff's proposed amendment would be futile because, even if the amended complaint properly pleaded Plaintiff's standing, the amended complaint still would fail to state a claim. Plaintiff appeals the district court's order of dismissal and denial of Plaintiff's motion for reconsideration.

II.

Plaintiff—conceding that her original complaint did not properly plead her standing to seek injunctive relief—contends that the district court erred in denying her request for leave to amend her complaint. Plaintiff says that her proffered amended complaint would have cured the original complaint's failure to plead standing. Plaintiff argues that the district court should have given Plaintiff one opportunity to cure her pleading defect before the district court dismissed with prejudice. We agree.

That Plaintiff—to pursue injunctive relief in federal court—must plead a genuine threat of imminent injury seems clear. *See generally Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992). And, that Plaintiff's original complaint failed to allege a genuine threat of future injury seems equally clear. But we are satisfied that Plaintiff's proffered amended complaint would have cured the defect about standing in the original complaint. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* --- U.S. ----, 120 S.Ct. 693, 705-06, 145 L.Ed.2d 610 (2000).

A district court, before dismissing a complaint with prejudice because of a mere pleading defect, ordinarily must give a plaintiff one opportunity to amend the complaint and to cure the pleading defect. *See Isbrandtsen Marine Servs., Inc. v. M/V INAGUA TANIA,* 93 F.3d 728, 734 (11th Cir.1996). Leave to amend, however, need not be granted where amendment would be futile. *See Galindo v. ARI Mut. Ins. Co.,* 203 F.3d

771, 777 n. 10 (11th Cir.2000). Here, the district court concluded that amendment would be futile because, even if Plaintiff could plead her standing to pursue the ADA claim, the complaint still would fail to state a claim. We, therefore, turn to Plaintiff's second contention on appeal.

### III.

Plaintiff contends that the district court's construction of Title III—that Title III does not apply to foreign-flag cruise ships in United States waters—was erroneous. Plaintiff argues that a cruise ship is a "public accommodation" under 42 U.S.C. § 12181(7) and, therefore, is subject to Title III.[3] And, according to Plaintiff, that the cruise ship happens to fly a foreign flag is unimportant; Plaintiff says that Title III applies to cruise ships in United States waters regardless of their nationality. We conclude that Plaintiff's complaint does state a claim under Title III of the ADA.

### A.

We first consider whether Title III applies to cruise ships at all.[4] Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). The pertinent issue, therefore, is whether a cruise ship may be a "public accommodation."

Our consideration of this question begins, of course, with the plain language of the statute. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 2781, 81

---

[3]Plaintiff also argues on appeal that Title III applies to cruise ships because cruise ships constitute "specified public transportation." *See* 42 U.S.C. § 12181(10). We note that Plaintiff's complaint does not allege that Defendant's cruise ship is "specified public transportation;" Plaintiff just alleged in her complaint that Defendant's cruise ship is a public accommodation. And, in any event, we need not consider Plaintiff's alternative argument because we conclude that a cruise ship may be a public accommodation subject to Title III. We, therefore, decline in this case to decide whether a cruise ship also constitutes "specified public transportation" under Title III.

[4]The district court did not address this issue. The district court concluded that, even if Title III applies to cruise ships generally, Title III does not apply to foreign-flag cruise ships (like Defendant's cruise ship). Nonetheless, Defendant does argue on appeal that Title III does not apply to cruise ships at all. We accordingly address the question. *See United States v. White,* 27 F.3d 1531, 1535 (11th Cir.1994) (noting that court of appeals may address fully-briefed issue of law not addressed by district court).

**4**

L.Ed.2d 694 (1984). And, "[i]f the intent of Congress is clear" from the plain language of the statute, our inquiry also ends with the statutory language. *See id.* In examining the statutory language, we bear in mind that a statute is not vague or ambiguous just because it is broad. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985).

Congress has provided, in Title III of the ADA, a comprehensive definition of "public accommodation." *See* 42 U.S.C. § 12181(7). "Public accommodations" include: "an inn, hotel, motel, or other place of lodging," 42 U.S.C. § 12181(7)(A); "a restaurant, bar, or other establishment serving food or drink," 42 U.S.C. § 12181(7)(B); "a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment," 42 U.S.C. § 12181(7)(C); "an auditorium, convention center, lecture hall, or other place of public gathering," 42 U.S.C. § 12181(7)(D); "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. § 12181(7)(E); "a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment," 42 U.S.C. § 12181(7)(F); and "a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." 42 U.S.C. § 12181(7)(L). Because Congress has provided such a comprehensive definition of "public accommodation," we think that the intent of Congress is clear enough.

That a cruise ship may contain some of the enumerated public accommodations is not in doubt. Cruise ships, in fact, often contain places of lodging, restaurants, bars, theaters, auditoriums, retail stores, gift ships, gymnasiums, and health spas. And, a public accommodation aboard a cruise ship seems no less a public accommodation just because it is located on a ship instead of upon dry land. In other words, a restaurant aboard a ship is still a restaurant. Very important, Congress made no distinctions—in defining "public accommodation"—based on the physical location of the public accommodation. We conclude,

therefore, that those parts of a cruise ship which fall within the statutory enumeration of public accommodations are themselves public accommodations for the purposes of Title III.[5]

That Congress might not have specifically envisioned the application of Title III to ships does not compel a different conclusion. Congress did intend that the ADA have a broad reach. *See Florida Paraplegic Ass'n v. Miccosukee Tribe of Indians of Fla.,* 166 F.3d 1126, 1128 (11th Cir.1999) (noting breadth of Title III); *see also* 42 U.S.C. § 12101(b) (noting that Congress intended—by enacting the ADA—to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and invoked "the sweep of congressional authority"). And, both the Supreme Court and this Court have concluded previously that the ADA is applicable to contexts that may not have been particularly envisioned by Congress. *See, e.g., Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 118 S.Ct. 1952, 1956, 141 L.Ed.2d 215 (1998) (applying ADA to alleged discrimination against disabled inmates in state prison system); *Florida Paraplegic Ass'n,* 166 F.3d at 1128-29 (applying Title III of ADA to Indian reservations). Because Title III is not inapplicable as a matter of law to cruise ships, we turn now to the foreign-flag issue.[6]

---

[5]Some cruise ships may contain none of the enumerated public accommodations; such cruise ships would not be subject to the public accommodation provisions of Title III.

> That a cruise ship contains some public accommodations does not mean that the entire cruise ship necessarily is subject to Title III. Only those portions of the cruise ship that come within the statutory definition of "public accommodation" are subject to the public accommodation provisions of Title III. Other parts of a ship, such as the bridge, the crew's quarters, and the engine room, might not constitute public accommodations. And, if those portions of a ship are not "public accommodations," they are not subject to Title III's public accommodation provisions.

> Which parts of a ship, if any, are "public accommodations" is a mixed question of law and fact. It is usually a question that requires fact-finding and that must be answered, in the first instance, in the district court.

[6]We recognize that the Justice Department—which is charged with primary enforcement of Title III, *see* 42 U.S.C. §§ 12186(b), 12188—has said that a cruise ship, for the purposes of Title III, may constitute a "public accommodation." *See* 28 C.F.R. pt. 36, app. B. Plaintiff urges this Court to defer to the Justice Department's interpretation of Title III. We need not address the question of deference because we conclude that the plain language of Title III makes Congress's intent sufficiently clear. *See Chevron,* 104 S.Ct. at 2781.

The district court determined that, as a matter of law, Title III of the ADA does not apply to foreign-flag cruise ships in United States waters. Plaintiff contends that the district court's conclusion was erroneous. We agree with Plaintiff.

The district court based its determination about foreign-flag cruise ships on the presumption against extraterritoriality set out in *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991) ("*Aramco* "). In *Aramco,* the Supreme Court announced a presumption that, in the absence of a clearly expressed intention to the contrary, legislation does not apply extraterritorially. *Id.* The district court—finding no clearly expressed intent to apply Title III outside the borders of the United States—invoked the presumption and concluded that Title III, as a matter of law, did not apply to Defendant's Bahamian-flag cruise ship.

The district court's conclusion, however, was grounded in an inaccurate legal assumption: that foreign-flag ships in United States waters are "extraterritorial."[7] "By definition, an extraterritorial application of a statute involves the regulation of conduct *beyond U.S. borders.*" *Environmental Defense Fund, Inc. v. Massey,* 986 F.2d 528, 531 (D.C.Cir.1993) (emphasis added). Accordingly, a foreign-flag ship sailing in United States waters is not extraterritorial. *See Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 113 S.Ct. 2891, 2919, 125 L.Ed.2d 612 (1993) (Scalia, J., dissenting). The presumption against extraterritoriality, therefore, is inapposite to this case.

We recognize that a separate and different presumption exists against the application of American law to the "internal management and affairs" of a foreign-flag ship in United States waters. *See McCulloch*

---

But, we do note that, in the light of the Justice Department's position, our ultimate conclusion—that Plaintiff's complaint states a claim under Title III—would remain the same, even if the language of Title III were vague and ambiguous.

[7]In *Aramco,* the Supreme Court invoked the presumption against extraterritoriality in deciding whether Title VII applies to a U.S. company's work site in Saudi Arabia. 111 S.Ct. at 1230.

*v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 83 S.Ct. 671, 677, 9 L.Ed.2d 547 (1963) (noting "well-established rule" that "the law of the flag state ordinarily governs the internal affairs of a ship"); *see also Benz v. Compania Naviera Hidalgo, S.A.,* 353 U.S. 138, 77 S.Ct. 699, 702, 1 L.Ed.2d 709 (1957). But, this presumption generally has been applied where application of American law would interfere with the relations between the ship's foreign owner and the ship's foreign crew. *See Dowd v. International Longshoremen's Ass'n,* 975 F.2d 779, 788-89 (11th Cir.1992) (presumption governs applicability of statute to "the practices of owners of foreign vessels which are temporarily present in an American port with regard to foreign employees working on these vessels").

In our view, this case does not involve the "internal management and affairs" of a foreign-flag ship; this case is about whether Title III requires a foreign-flag cruise ship reasonably to accommodate a disabled, fare-paying, American passenger while the ship is sailing in American waters. We conclude, therefore, that the presumption for the "internal management and affairs" of foreign-flag ships does not apply in this case.

We think, instead, that this case is like *Cunard S.S. Co. v. Mellon,* 262 U.S. 100, 43 S.Ct. 504, 67 L.Ed. 894 (1923). In *Cunard,* the Supreme Court decided—without invoking presumptions about foreign-flag vessels—that the National Prohibition Act applied to foreign-flag ships in United States waters. *Id.* at 509. The *Cunard* Court noted that Congress intended the Prohibition Act to have broad reach and to apply "throughout the territorial limits of the United States." *Id.* And, the Court observed that Congress had drawn no distinction in the statute between domestic and foreign-flag ships. *See id.*

As we already have explained, Title III—like the Prohibition Act—was intended to have a broad reach. *See Florida Paraplegic Ass'n,* 166 F.3d at 1128; *see also* 42 U.S.C. § 12101(b). In addition, Congress made no distinction between domestic cruise ships and foreign-flag cruise ships in the statute. This factor seems especially important because, as we already have concluded, Congress intended Title III to apply to at least some parts of some cruise ships. And, according to the Department of Transportation, "[v]irtually all cruise ships serving U.S. ports are foreign flag vessels." *See* 56 Fed.Reg. 45,584, 45,600. The idea that

**8**

Congress intended to apply Title III to only domestic cruise ships, in the light of the breadth of the ADA, seems strange. We, therefore, conclude that Title III of the ADA is not inapplicable, as a matter of law, to foreign-flag cruise ships in United States waters.[8]

IV.

The district court erred in concluding that Title III of the ADA, as a matter of law, does not apply at all to foreign-flag cruise ships sailing in United States waters. The district court, accordingly, erred in dismissing Plaintiff's complaint for failure to state a claim. As such, Plaintiff's proffered, amended complaint would not have been futile, and the district court should have granted Plaintiff leave to amend her complaint and to plead properly her standing to pursue injunctive relief. We, therefore, VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

VACATED and REMANDED.

---

[8]Defendant points to no inconsistency between application of Title III in this case and international treaties and conventions governing shipping. We, therefore, do not address whether the treaty obligations of the United States might, in some cases, preclude or limit application of Title III.