Sergio **RENDON, Jose Galofre, Chris Leone, Joann Norris, and Kelly–Greene, all individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**VALLEYCREST PRODUCTIONS, LTD., and ABC Television Network, Inc., Defendants.**

**No. 1:00CV00830CIV.**

United States District Court, S.D. Florida.

Oct. 30, 2000.

Michael F. Lanham, P.A., Miami, FL, for Plaintiffs.

Ronald M. Rosengarten, Robert S. Fine, Greenberg Trauring, Miami, FL, Brian Clayborne Blair, Greenberg Trauring, Orlando, FL, for Defendants.

### ORDER OF DISMISSAL

MORENO, District Judge.

Plaintiffs, a group of disabled individuals (excluding Kelly–Greene who is the Director of the Center for Independent Living of South Florida), have raised various claims against Defendants in a nine-count Class Action Amended Complaint. Plaintiffs purport to represent a class of future disabled contest participants who cannot access or equally compete in Defendants' contest, "Who Wants to Be a Millionaire," based solely upon their disabilities. Because the definition of "public accommodation" is not broad enough to encompass the *process* for selecting individuals to be participants in the game show, the complaint is dismissed.

## I. BACKGROUND

Plaintiffs claim that they, and others with similar disabilities, are subject to discrimination in violation of Title III, because they cannot compete on an equal basis when participating in the initial qualifying round of Defendants' contest due to the time limitations and use of touch-tone phones. Plaintiffs seek injunctive, compensatory, and punitive damages for violation of Title III, and have filed a claim for negligent infliction of emotional distress based upon the alleged discrimination.

Defendants are the owners and/or operators of a network television quiz show entitled "Who Wants to Be a Millionaire" (the "Show"). Contestants call a toll-free number, answer a series of questions, and compete to become participants on the Show. The initial qualifying round contains time limitations and involves the use of an automated telephone system requiring touch-tone phones.

Defendants have moved to dismiss all claims.

## II. WHETHER TITLE III'S PUBLIC ACCOMMODATION PROVISIONS APPLY

The threshold issue presented with respect to Plaintiffs' Title III claims is whether the Title III "public accommodation" provisions apply to Defendants' process of selecting contestants to participate on the Show through an automated telephone system. If the answer is in the negative, all Title III claims must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1).

In relevant part, Title III provides that no person who "owns, leases (or leases to), or operates a place of public accommodation" may discriminate against an individual on the basis of a disability in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

There is an exhaustive list of twelve categories of private entities included in the definition of the term "public accommodation." *Florida Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Florida,* 166 F.3d 1126, 1128 (11th Cir. 1999). Under Title III, the following private entities are considered public accommodations, so long as the operations of such entities affect commerce:

(B) an inn, hotel, motel or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(C) a restaurant, bar, or other establishment serving food or drink;

(D) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(E) an auditorium, convention center, lecture hall, or other place of public gathering;

(F) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(G) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(H) a terminal, depot, or other station used for specified public transportation;

(I) a museum, library, gallery, or other place of public display or collection;

(J) a park, zoo, amusement park, or other place of recreation;

(K) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(L) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service establishment; and

(M) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

Congress enacted Title III because many disabled individuals lead isolated lives and do not frequent places of public accommodation. H.R. No. 101–485(II), 101st Cong.2d Sess., *reprinted in* 1990 U.S.C.C.A.N. 303. The statute is designed to prevent discrimination by the practices or procedures of the public accommodation itself, which may deny the disabled equal access to a service the public accommodation offers. *Stoutenborough v. National Football League, Inc.*, 59 F.3d 580, 583 (6th Cir.1995) (holding that the televised broadcast of a football game is not subject to Title III, but noting that where the game is played is a place of public accommodation and where the game is watched also may be a place of public accommodation).

Under Title III, the focus of analysis is the public accommodation, not the provider of the public accommodation. "It is all of the services which the public accommodation offers, not all services which the lessor of the public accommodation offers which fall within the scope of Title III." *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 612 (3rd Cir.1998) (*citing Stoutenborough*, 59 F.3d at 583 (citation omitted)).

The Eleventh Circuit decision, *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237 (11th Cir.2000), highlights the distinction between the provider of a public accommodation and the public accommodation itself. There, the court found that certain portions of a cruise ship, such as restaurants, gift shops, and gymnasiums, fall within the statutory definition of a place of public accommodation. As such, the court ruled that Title III is applicable to those portions of the cruise ship. *Id.* at 1241. However, the *Stevens* court cautioned that while "a cruise ship contains some public accommodations[, that] does not mean that the entire cruise ship necessarily is subject to Title III." *Id.* at 1241 n. 5.

Likewise, in the present action, there are certain portions of Defendants' Show that are subject to Title III's public accommodation provisions, such as the theater where the Show is taped. 42 U.S.C. § 12181(7)(C). However, Plaintiffs do not style their complaint against the studio where the Show is taped. Rather, Plaintiffs' complaint solely is focused on the automated telephone process for selecting contestants to be participants on the Show. Plaintiffs do not raise any issue in their complaint involving any *place* that is subject to the public accommodation provisions of Title III. Rather, Plaintiffs seek to have this Court rule that the process of selecting contestants to participate on the Show—through an automated telephone system—is subject to Title III's public accommodation provisions, and that Defendants' process places Plaintiffs at a disad-

vantage to become contestants on the Show in violation of Title III.

The Title III definition of "public accommodation" is not broad enough to encompass a process for selecting individuals to be participants on a game show. *See Brown v. 1995 Tenet ParaAmerica Bicycle Challenge,* 959 F.Supp. 496 (N.D.Ill.1997) (dismissing Title III complaint where plaintiff alleged that he was denied a chance to participate in a cycling race). *But cf. Martin v. PGA Tour,* 204 F.3d 994 (9th Cir.2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 30, 147 L.Ed.2d 1052 (2000) (finding that Title III is applicable to the rules of a private golf tournament because golf courses remain places of public accommodation while a PGA tournament is played on them).

Certain aspects of Defendants' Show are applicable to Title III, but Plaintiffs have failed to identify and allege discrimination based upon any place of public accommodation. Plaintiffs seek to have "all services which the lessor of the public accommodation offers" brought under the rubric of Title III. *Ford,* 145 F.3d at 612; *cf. Bowers v. National Collegiate Athletic Ass'n,* 9 F.Supp.2d 460, 482 (D.N.J.1998) ("Mere operation of one place of public accommodation does not by itself subject every other aspect of the operator's business to Title III."). The statute does not comprise all services that Defendants offer. *See Stevens,* 215 F.3d at 1240–41 (noting that Congress' definition of "public accommodation" is comprehensive and that Congress' intent is clear). Title III is inapplicable to Defendants' automated telephone system of selecting contestants to participate on the Show. Accordingly, Plaintiffs Title III claims must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1).

Nonetheless, the Court notes that while Title III does not mandate that Defendants make the qualifying rounds for contestants on the Show more accessible to disabled individuals, the converse is also true. Title III does not prevent Defendants from making the Show more accessible to its disabled constituents through the use of a telecommunications device for the deaf (TDD) and a voice option for use with the automated phone system, or by changing the structure of the initial qualifying round to attract a more diverse group of contestants. Indeed, the goal of such a popular show should be to encourage participants with disabilities, as they represent a large and important portion of the citizenry. This goal, although not required by the Americans with Disabilities Act, would be consistent with the spirit of such law passed with overwhelming support.

## III. PLAINTIFFS' ALLEGATION OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■ Plaintiffs claim negligent infliction of emotional distress based upon Defendants' alleged discriminatory process of selecting individuals to be contestants on the Show. Under Florida law, "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." *R.J. v. Humana of Florida, Inc.,* 652 So.2d 360, 362 (Fla.1995) (citation omitted).

■ Plaintiffs have failed to allege any physical impact. "Florida courts have historically adhered to a requirement that some physical impact to a claimant must be alleged and demonstrated before the claimant can recover damages." *Gracey v. Eaker,* 747 So.2d 475, 477 (Fla.Dist.Ct. App.1999). As such, Plaintiffs' allegation fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. Pro. 12(b)(6)

## IV. CONCLUSION

It is,

ADJUDGED that Defendant's Motion to Dismiss (**D.E. No. 17**) is GRANTED. The entire complaint, filed on *June 14, 2000,* is dismissed with prejudice.