United States Court of Appeals
Fifth Circuit

**F I L E D**

January 12, 2004

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-21154
03-20056

_____

DOUGLAS SPECTOR, ET AL.,

Plaintiffs-Appellants,

versus

NORWEGIAN CRUISE LINE LTD., doing business as Norwegian
Cruise Line,

Defendant-Appellee.

_____

DOUGLAS SPECTOR, ET AL.,

Plaintiffs-Appellees,

versus

NORWEGIAN CRUISE LINE LTD., doing business as Norwegian
Cruise Line,
Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Texas

_____

Before REAVLEY, JONES, and CLEMENT, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This appeal presents the question whether Title III of the Americans with Disabilities Act ("ADA") applies to foreign-flagged cruise ships. See 42 U.S.C. § 12182 (2000) et. seq. As a matter of first impression in this circuit, we hold that it does not. We affirm in part and reverse in part the district court's interlocutory orders that formed the basis of this § 1292(b) appeal.

## I. BACKGROUND

At various times in 1998 and 1999, the plaintiffs took cruises on Norwegian Cruise Line ("NCL") ships, the *Norwegian Sea* and the *Norwegian Star*. The cruises originated in the Port of Houston, Texas, and traveled to foreign ports of call. Both ships sail under the Bahamian flag. Afterwards, the plaintiffs filed suit asserting that they were discriminated against in violation of Title III of the ADA.

The plaintiffs comprise "disabled plaintiffs" and "companion plaintiffs." The disabled plaintiffs allege that physical barriers on the ships denied them access to: (1) emergency evacuation equipment and emergency evacuation-related programs; (2) facilities such as public restrooms, restaurants, swimming pools, and elevators; and (3) cabins with a balcony or a window. The disabled plaintiffs also allege that NCL charged them a premium for use of the four handicapped-accessible cabins and the assistance of crew members.

The companion plaintiffs allege that they were discriminated against and denied access to the ships' facilities and amenities because of their "known association" with the disabled plaintiffs.

Alleging their intent to take future NCL cruises, the plaintiffs sought a declaratory judgment, injunctive relief, and reasonable attorneys' fees and costs.  More specifically, the plaintiffs sought injunctive relief requiring NCL to remove certain barriers, some temporary and some permanent, that obstructed their access to the ships' facilities.  NCL moved to dismiss for failure to state a claim.  FED. R. CIV. P. 12(b)(6). After considering the motion, the district court:  (1) ruled that foreign-flagged cruise ships are subject to Title III of the ADA; (2) dismissed the plaintiffs' claim concerning removal of physical barriers because the federal government failed to promulgate the necessary regulations; and (3) ruled that the companion plaintiffs stated a claim for associational discrimination.[1]  The district court certified the matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and we accepted the certification.[2]

---

[1]     The Government's duty to promulgate regulations pertaining to cruise ships, according to the district court, stemmed from 42 U.S.C. §§ 12186(a)(b).

[2]     The district court also ruled that the plaintiffs were not entitled to attorneys' fees and court costs. The parties have not addressed these issues on appeal.  Furthermore, because we conclude that Title III of the ADA does not apply to foreign-flagged cruise ships, we do not reach the other issues decided below and subsequently raised in this appeal (i.e., whether the federal government had a duty to promulgate regulations and whether the non-disabled

## II. STANDARD OF REVIEW

This court reviews de novo the district court's grant or denial of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. See Frank v. Delta Airlines, Inc., 314 F.3d 195, 197 (5th Cir. 2002). "The complaint must be liberally construed in favor of the plaintiff, and all the facts pleaded in the complaint must be taken as true to determine whether the plaintiff has stated a valid claim for relief." Haynes v. Prudential Health Care, 313 F.3d 330, 333 (5th Cir. 2002) (citations and quotation omitted). "The dismissal will be upheld only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." Id. The district court's interpretation of a statute, the primary issue in this case, is also subject to de novo review. Lara v. Cinemark USA, Inc., 207 F.3d 783, 786 (5th Cir. 2000).

## III. DISCUSSION

NCL challenges the district court's conclusion that Title III of the ADA applies to foreign-flagged cruise ships. NCL asserts that there is no evidence that Congress intended Title III to apply to foreign-flagged vessels or that Congress even considered the issue. Although, as will be seen, arguments can be made both ways concerning the interpretation of congressional intent, we are persuaded that NCL is correct.

plaintiffs stated a claim for associational discrimination).

4

Title III of the ADA provides that: "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a)(2000). Title III also prohibits discrimination against disabled individuals on "specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce." 42 U.S.C. § 12184(a)(2000). Both "public accommodations" and "specified public transportation services" are subject to the barrier removal requirements of Title III. See 42 U.S.C. §§ 12182(b)(2)(A)-(C)(2000).[3]

It is settled that "a ship voluntarily entering the territorial limits of another country subjects itself to the laws and jurisdiction of that country." Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 142, 77 S.Ct. 699, 701-02 (1957) (citing Wildenhus' Case, 120 U.S. 1, 7 S.Ct. 385 (1887)). However, the local sovereign is under no obligation to exercise its authority to the outer limits of its jurisdictional reach. Benz, 353 U.S. at 142. Since "the exercise of that jurisdiction is not mandatory but discretionary," id., the Supreme Court held,

---

[3] The district court found that Title III applies to cruise ships as both a "public accommodation" and a "specified public transportation service." NCL did not dispute this issue in the district court, and does not raise the issue on appeal. Therefore, we assume, without deciding, that Title III applies to cruise ships generally and limit this decision to foreign-flagged cruise ships. Whether Title III applies to domestic cruise ships remains an open question in this circuit.

to apply domestic law to foreign vessels entering United States waters, "there must be present the affirmative intention of the Congress clearly expressed." Id. at 147. Absent an affirmative intention, "such appeal should be directed to the Congress rather than the courts." Id.

In Benz, the Supreme Court considered whether the Labor Management Relations Act of 1947 ("LMRA") applied to a dispute involving "a foreign ship operated entirely by foreign seamen under foreign articles while the vessel is temporarily in an American port." 353 U.S. at 139. The Court answered that question in the negative. Id. If Congress had "so chosen, it could have made the Act applicable to wage disputes arising on foreign vessels between nationals of other countries when the vessel comes within its territorial waters." Id. at 142. But given the dearth of legislative history evincing Congress's intent to apply the LMRA to foreign-flagged vessels, id. at 143-147, the Court concluded that Congress had not "fashion[ed] itself to resolve labor disputes between nationals of other countries operating ships under foreign laws." Id. at 142.

Likewise, in McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671 (1963), which addressed whether the National Labor Relations Act ("NLRA") applied to the "maritime operations of foreign-flag ships employing alien seamen," id. at 13, the Court again emphasized that the decisive question was not whether Congress had the power

6

to apply the NLRA to foreign-flagged ships, but whether Congress had chosen to do so.  See id. at 17.  The McCulloch plaintiffs asserted that their case, unlike Benz, involved "a fleet of vessels not temporarily in the United States waters but operating in a regular course of trade between foreign ports and those of the United States[.]"  McCulloch, 372 U.S. at 19-20.  The Court found the distinction unavailing.

As in Benz, the McCulloch plaintiffs were "unable to point to any specific language in the Act itself or in its extensive legislative history that reflect[ed] such a congressional intent."  McCulloch, 372 U.S. at 20.  Accordingly, the Court held that the NLRA did not apply to foreign-flagged ships, and it reiterated that the plaintiffs should petition "to the Congress rather than to us."  Id. at 22 (citation omitted).

EEOC v. Arabian American Oil Co., 499 U.S. 244, 111 S.Ct. 1227 (1991) ("ARAMCO"), amplifies the Supreme Court's adherence to established principles of statutory construction and fundamental tenets of international law.  In ARAMCO, the Court considered whether Title VII applied "extraterritorially to regulate the employment practices of United States employers who employ United States citizens abroad."  Id. at 247.  The Court stated that "[i]t is a longstanding principle of American law that legislation of Congress, unless contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."  Id. at 248 (citations and quotations omitted).

7

"It serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." Id. (citing McCulloch, 372 U.S. at 20-22). Therefore, "[w]e assume that Congress legislates against the backdrop of the presumption against extraterritoriality." ARAMCO, 499 U.S. at 248 (quoting Benz's requirement of clear expression by Congress, 353 U.S. at 147).

The EEOC, relying on two statutory provisions, contended that Congress did intend for Title VII to apply abroad. First, the EEOC argued that Title VII's definitions of "employer" and "commerce" were sufficiently broad to include American companies located beyond the United States. Despite conflicting plausible interpretations of the relevant language, the Court found that it "need not choose between these competing interpretations as we would be required to do in the absence of the presumption against extraterritorial application[.]" ARAMCO, 499 U.S. at 250. Moreover, under the EEOC's interpretation, "[t]he intent of Congress as to the extraterritorial application of this statute must be deduced by inference from boilerplate language which can be found in any number of Congressional acts, none of which have ever been held to apply overseas." Id. at 250-51 (citing Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.) (other citations omitted).

Second, the Court rejected the contention that the "alien exemption" provision created a negative inference

8

supporting application of Title VII abroad.  "Without clearer evidence of congressional intent to do so than is contained in the alien-exemption clause, we are not willing to ascribe to that body a policy which would raise difficult issues of international law by imposing this country's employment-discrimination regime upon foreign corporations operating in foreign commerce." ARAMCO, 499 U.S. at 255.

The Court also found that other aspects of Title VII belied the EEOC's position.  Title VII only addressed issues of state sovereignty, and Congress failed to provide any mechanisms for the statute's overseas enforcement.  Moreover, unlike the Age Discrimination in Employment Act ("ADEA"), a parallel statute, Congress did not address conflicts with laws of other nations.[4]

Together, Benz and McCulloch prohibit United States courts from applying domestic statutes to foreign-flagged ships without specific evidence of congressional intent.  Under the Supreme Court's framework, Congress may enact legislation that governs foreign-flagged cruise ships operating within United

---

[4]      After the passage of the ADEA several circuits determined that it could not be applied extraterritorially to "Americans employed outside the United States by American employers."  Cleary v. United States Lines, Inc., 728 F.2d 607, 610 (3d Cir. 1984); see also Thomas v. Brown & Root, Inc., 745 F.2d 279, 281 (4th Cir. 1984) (per curiam); Zahourek v. Arthur Young & Co., 750 F.2d 827, 828-29 (10th Cir. 1984).  However, shortly thereafter, Congress amended the ADEA to allow extraterritorial application under certain circumstances.  See generally 29 U.S.C. §§ 623 and 803.  Consequently, after the ARAMCO decision, Congress conformed Title VII to the ADEA and included as "employees" United States citizens working "in a foreign country."  See 42 U.S.C. § 2000e(f)(2000). Title VII also now exempts American employers located abroad from compliance with Title VII if it would cause the employer "to violate the law of the foreign country in which such workplace is located." 42 U.S.C. § 2000e-1(b)(2000).

States waters, but it must clearly indicate its intention to do so. See Benz, 353 U.S. at 147. ARAMCO applies the same clear-statement requirement to gauge the extraterritorial application of statutes.

There is no indication, either in the statutory text or in the ADA's extensive legislative history, that Congress intended Title III to apply to foreign-flagged cruise ships. If Congress had so intended, "it would have addressed the subject of conflicts with foreign laws and procedures." ARAMCO, 499 U.S. at 256. Congress's silence cannot be read to express an intent to legislate where issues touching on other nations' sovereignty are involved.[5]

Furthermore, an act of Congress "ought never to be construed to violate the law of nations, if any other possible construction remains[.]" Murray v. The Schooner Charming Betsy, 6 U.S. 64, 118 (1804); see also Weinberger v. Rossi, 456 U.S. 25, 32, 102 S.Ct. 1510, 1516 (1982); Sampson v. Federal Republic of Germany, 250 F.3d 1145, 1152 (7th Cir. 2001)(recognizing that the "Charming Betsy canon . . . has traditionally justified a narrow interpretation of ambiguous legislation to avoid violations of

---

[5]

Under international law, the flag state is responsible for adopting and enforcing laws to protect the welfare of the crew and passengers aboard a ship and to maintain good order thereon, and for ensuring that activities aboard the ship do not endanger other ships or the marine environment. This responsibility continues at all times, wherever the ship is located.

RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 502 cmt. a (1987).

international law"). Thus "[b]ecause Congress legislates against the backdrop that includes those international norms that guide comity analysis, absent a contrary legislative direction the doctrine may properly be used to interpret any statute." In re Maxwell Communication Corp., 93 F.3d 1036, 1047 (2d Cir. 1996). Because the Title III barrier removal provisions may govern the finest details of maritime architecture in the quest to render ships fully accessible to disabled passengers, those provisions pose a stark likelihood of conflicts with the standards set out in the International Convention for Safety of Life at Sea ("SOLAS").[6] Therefore, as a matter of statutory construction, Title III must be narrowly construed in a manner that avoids these potential conflicts. See Trans World Airlines, Inc. v. Franklin Mint Corp., 466 U.S. 243, 252, 104 S.Ct. 1776, 1782 (1984) ("There is, first, a firm and obviously sound canon of construction against finding an implicit repeal of a treaty in ambiguous congressional action.").

Nevertheless, the plaintiffs offer several counter-arguments. First, the plaintiffs contend that because the ADA

---

[6] The Passenger Vessel Access Advisory Committee ("PVAAC"), a government-created body, identifies apparent conflicts between the Title III barrier removal standards and SOLAS in its recent report. See PVACC Report at Chapter 13, Parts I-II available at http://www.access-board.gov/news/pvaac-rept.htm (referencing potential conflicts between SOLAS and the guidelines announced by the ADAAG Review Advisory Committee — the governmental body tasked by Congress with formulating the Title III barrier removal guidelines). Thus, there is little, if any, dispute that Title III barrier removal requirements potentially conflict with SOLAS, a treaty the United States has ratified and honors. See United States v. Locke, 529 U.S. 89, 102-03 (2000).

11

applies to cruise ships generally, it presumptively applies to foreign-flagged cruise ships, absent a specific exemption. Plaintiffs rely primarily on Cunard S.S. Co. v. Mellon, 262 U.S. 100, 43 S.Ct. 504 (1923), to support this argument.[7]

In Cunard, the Supreme Court held that the National Prohibition Act, enacted to enforce the Eighteenth Amendment, applied to foreign-flagged vessels in United States ports. Id. at 124-26. Based on the statute's terms, the Court found that Congress intended the Act to "be operative throughout the territorial limits of the United States" including "all merchant vessels, whether foreign or domestic," when within those limits. Id. at 129. The Court noted that the Act "contains no exception of ships in either class and the terms in which it is couched indicate that none is intended." Id. at 126. Any exception for foreign-flagged ships, the Court said, would defeat the attainment of the Act's obvious purpose — to prevent the use of intoxicating liquor as a beverage. See 27 U.S.C. § 12 (1919). Last, the Act's specific exemption for transportation of liquor through the Panama Canal expressed Congress's intent to apply the

_____

[7] Plaintiffs also point to Pennsylvania Dep't of Corrections v. Yeskey, 534 U.S. 206, 122 S.Ct. 708 (1998), to support their claim that congressional silence is not dispositive. In Yeskey, a Title II ADA case, the Supreme Court interpreted the term "public entity" to include state prisons. Yeskey, unlike the instant case, found Congress's intent from the express statutory language, and not from its silence. Id. at 210. The Court's axiomatic observation that statutes may have unanticipated applications does not alter the presumption against extraterritorial application.

statute to all vessels within the territorial waters of the United States.  Id. at 128-29.

Cunard does not control.  First, the Supreme Court premised Cunard on the all-pervasive reach of the Eighteenth Amendment and its enforcing statute on specific inferences from the Panama Canal provision.  Second, unlike Benz, McCulloch, and ARAMCO, Cunard did not involve the possibility of extraterritorial application, but instead regulated only the commercial transport of  liquor into United States ports.  As the Court noted, "the National Prohibition Act discloses that it is intended only to enforce the Eighteenth Amendment and limits its field of operation, like that of the Amendment, to the territorial limits of the United States." Cunard, 262 U.S. at 129.

This second distinction is significant. Extraterritorial application of any statute is impermissible absent "the affirmative intention of the Congress clearly expressed[.]"  Benz 353 U.S. at 147; ARAMCO, 499 U.S. at 248; Smith v. United States, 507 U.S. 197, 204 n.5, 113 S.Ct. 1178, 1183 (1993) (recognizing that "the presumption is rooted in a number of considerations, not the least of which is the commonsense notion that Congress generally legislates with domestic concerns in mind").  This well-founded clear-statement rule serves "to protect against unintended clashes between our

13

laws and those of other nations which could result in international discord." ARAMCO, 499 U.S. at 248.

In the present case, many of the structural changes required to comply with Title III would be permanent, investing the statute with extraterritorial application as soon as the cruise ships leave domestic waters. The plaintiffs insist, however, that Title III need not be enforced beyond United States waters. They argue that this suit seeks enforcement within the United States only, or in the alternative, that courts can choose to enforce those aspects of Title III that do not conflict with international law or are not permanent in nature. This approach is inconsistent with the Supreme Court's pronouncements in Benz, McCulloch, and ARAMCO. In none of those cases did the Court examine each proposed application of domestic law to determine whether it might conflict with other nations' laws. Whether Title III's barrier removal provision, if applied to foreign-flagged cruise ships, would have extraterritorial impact is a matter of statutory construction, not a fact-intensive inquiry. Thus, potential conflicts with transnational or international law mandate that we construe the statute narrowly to avoid international discord.[8]

---

[8] McCulloch did not examine individual applications of the NLRA to reach its result. Instead, the Court pointed to the prospective conflict that would result from "the concurrent application of the Act and the Honduran Labor Code[.]" 372 U.S. at 21. This impending conflict exemplified the strong basis for its cannon of construction mandating a clear congressional statement. As a result, the Court ruled, as a matter of statutory construction, that the statute could not be applied extraterritorially based on the "possibility of inter-

14

The plaintiffs next rely upon the Eleventh Circuit's decision in Stevens v. Premier Cruises, Inc., 215 F.3d 1237 (11th Cir. 2000), reh'g denied, 284 F.3d 1187 (11th Cir. 2002). In Stevens, the court found that Title III applies to those aspects of cruise ships (restaurants, retail stores, health spas, etc.) that qualify as public accommodations. Id. at 1241. Further, since Congress did not exclude coverage of foreign-flagged cruise ships while in domestic waters, the court reasoned that the ADA must apply to them. In this connection, the court viewed ARAMCO's presumption against "extraterritorial" application of domestic law as inapposite, because it did not consider Title III's requirements to apply outside United States waters. Id. at 1242.[9]

Stevens limited the Benz and McCulloch presumption against application of American law strictly to the "internal management and affairs," specifically labor-management relations, of a foreign-flag ship. Given Congress's intent to apply Title III broadly, the Stevens court concluded instead that Cunard controlled.

national discord[.]" Id.

[9]    The Stevens court attempted to clarify its position in its order denying the request for rehearing. Stevens, 284 F.3d at 1187. The court stated that it did not foreclose the possibility of specific conflicts between international laws and Title III, but that those specific questions could not be addressed at the motion to dismiss stage. Id. However, as discussed above, the court's approach is misguided. The conflicts with international law has statutory construction implications, above and beyond any factual dispute that may exist. The Stevens court failed to account for these implications, and therefore erred in its construction of Title III.

15

With due respect, we find Stevens unpersuasive. In Stevens, the court maintained that Congress's silence as to cruise ships meant not only that Title III applied to cruise ships, a contention we do not comment upon, but that the coverage of cruise ships necessarily implied coverage of foreign-flag cruise ships. This latter inference disregards the Supreme Court's admonition that before applying domestic law in the "delicate field of international relations," Congress must clearly express its intent. McCulloch, 372 U.S. at 21.

That Congress intended Title III to have "broad reach" is insufficient to warrant application to foreign-flagged cruise ships. Title VII and the ADEA, remedial statutes comparable in breadth and purpose to the ADA, were also intended to have "broad reach." See Miller v. Pub. Storage Mgmt., Inc., 121 F.3d 215, 218 (5th Cir. 1997) (recognizing that the "ADA is part of the same broad remedial framework as the ADEA and Title VII, and that all the anti-discrimination acts have been subjected to similar analysis"). Nevertheless, Congress's failure specifically to address extraterritorial implications and conflicts with inter-national law proved fatal to both Title VII and the ADEA in this regard. The Supreme Court's decision in Cunard, by contrast, turned on more specific statutory language and the nationally pervasive reach of the Eighteenth Amendment and implementing statutes.

Ultimately, the <u>Stevens</u> court's attempt to distinguish <u>Benz</u> and <u>McCulloch</u> is unpersuasive.  Like those cases, the present case deals with the "internal management and affairs" of a foreign-flagged ship.  <u>See</u> <u>McCulloch</u>, 372 U.S. at 20.  As noted above, the plaintiffs' proposed accommodations, if applicable, would require NCL to adjust evacuation procedures and responsibilities of the crew, and would mandate structural changes to the ships.  Thus, it is incorrect to suggest, as <u>Stevens</u> does, that such modifications do not involve the "internal management and affairs" of the ship merely because they were requested by a passenger rather than an employee.  Further, the court's order on rehearing essentially concedes that portions of Title III will apply extraterritorially, but it sidesteps the obvious implication in terms of <u>Benz</u>, <u>McCulloch</u>, and <u>ARAMCO</u>.

Last, the plaintiffs rely on the opinions of the Department of Justice ("DOJ") and the Department of Transportation ("DOT") that Title III applies to foreign-flagged cruise ships.  The opinions of DOJ and DOT are presented in technical assistance manuals and public comments, not formal adjudications or rulemaking.  <u>See</u> DOJ TITLE III TECHNICAL ASSISTANCE MANUAL III-1.2000(d); <u>See</u> 56 FED. REG. 45,584, 45,600 (1991).  Nonetheless, the plaintiffs argue that these opinions are entitled to <u>Chevron</u> deference.

These informal administrative opinions are not entitled to <u>Chevron</u> deference.  <u>See</u> <u>Christensen v. Harris County</u>, 529 U.S.

17

576, 587, 120 S.Ct. 1655, 1662-63 (2000). "Interpretations such as those in opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant Chevron-style deference." Id. (citing Reno v. Koray, 515 U.S. 50, 61, 115 S.Ct. 2021, 2027 (1995)). "Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' . . . but only to the extent that those interpretations have the 'power to persuade[.]'" Christensen, 529 U.S. at 587 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164 (1944)) (citing ARAMCO, 499 U.S. at 256-58). For the reasons discussed above, the respective positions of DOJ and DOT are not persuasive.[10]

In the end, "when it desires to do so, Congress knows how to place the high seas within the jurisdictional reach of a

_____

[10] We must also note that Title III directs DOJ and DOT to issue regulatory guidelines with respect to both new construction and barrier removal. See 42 U.S.C. § 12186(b). Both agencies promulgated regulations pertaining to barrier removal. See 28 C.F.R. 36.304 (2003). DOJ and DOT also promulgated regulations concerning new construction and alterations. See 28 C.F.R. § 36.406(a)-(d)(2003). However, DOJ and DOT specifically exempted cruise ships, which demanded - because of unique concerns - separate new construction and alteration regulations. See 28 C.F.R. PT. 36, APP. B, at 664 (2003)(stating that DOJ "will not interpret the new construction and alterations provisions of Subpart D" to apply to cruise ships "pending further development of specific requirements"). Amazingly, now more than a decade since the ADA's passage, DOJ and DOT have yet to issue new construction and alteration regulations specific to cruise ships. Nevertheless, these agencies continue to demand that existing cruise ships meet the rigors of the barrier removal guidelines, even though newly constructed cruise ships remain altogether unregulated. The DOJ and DOT maintain this curious position despite their self-imposed regulatory mandate that "requirements for barrier removal under § 36.304 shall not be interpreted to exceed the standards for [new construction and] alteration[.]" 28 C.F.R. § 36.304(g)(1). However, because we hold that Title III may not be applied to foreign-flagged cruise ships, we need not reach this thorny regulatory issue.

18

statute."  ARAMCO, 499 U.S. at 258 (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 440, 109 S.Ct. 683, 691 (1989)).  Congress, in enacting Title III of the ADA, failed to express any intention to subject foreign-flagged cruise ships to its dictates.  Thus, application of Title III to foreign-flagged cruise ships is impermissible.

## IV.  CONCLUSION

Foreign-flagged cruise ships are not subject to Title III of the ADA unless and until Congress clearly expresses its intention to do so.  We therefore sustain, albeit on different grounds, the district court's dismissal of the disabled plaintiffs' barrier removal claims.  However, we reverse the district court to the extent that any Title III ADA claims remained, including those of the non-disabled plaintiffs, and remand for further proceedings consistent herewith.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.